UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, *as subrogee of Kanawha County Board of Education*, | ) ) ) ) |
| *Plaintiff*, | ) ) |
| v. | ) ) No. 1:25-cv-00480-JMS-CSW |
| CUMMINS INC., | ) ) ) |
| *Defendant*. | ) ) ) |
| CUMMINS INC., | ) ) ) |
| *Counter Claimant*, | ) ) |
| v. | ) ) |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, *as subrogee of Kanawha County Board of Education*, | ) ) ) ) |
| *Counter Defendant*. | ) ) |

**ORDER**

Plaintiff National Union Fire Insurance Company of Pittsburgh, PA ("National Union") issued an insurance policy (the "Policy") to Kanawha County Board of Education ("Kanawha") that covered Kanawha's fleet of school buses. In November 2023, one of Kanawha's buses was damaged when it caught fire. The bus engine was manufactured by Defendant Cummins Inc. ("Cummins") and National Union initiated this litigation, as subrogee of Kanawha, against Cummins to recover amounts it had paid under the Policy. [Filing No. 1.] Cummins then filed a Counterclaim against National Union and eventually an Amended Counterclaim, alleging that

1

National Union engaged in spoliation of evidence when it discarded or destroyed the bus engine during its investigation. [Filing No. 27 at 10-13.] National Union has now filed a Motion to Dismiss the Amended Counterclaim of Defendant, Cummins Inc., [Filing No. 29], which is ripe for the Court's decision.

## I.
### STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim that does not state a right to relief. The Federal Rules of Civil Procedure require that a complaint or counterclaim provide the defendant or counter-defendant with "'fair notice of what the…claim is and the grounds upon which it rests.'" See *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)). In reviewing the sufficiency of a counterclaim, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the counter-plaintiff. See *Active Disposal Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011). A Rule 12(b)(6) motion to dismiss asks whether the counterclaim "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)). The Court will not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief. See *McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011). Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012). This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## II.
### BACKGROUND

**A.  The Complaint**

National Union initiated this litigation in March 2025 and sets forth the following allegations in the Complaint, which the Court accepts as true only for purposes of the Motion to Dismiss the Amended Counterclaim.  [Filing No. 1.]

National Union issued the Policy to Kanawha, which covered losses incurred to its fleet of school buses, including a 2018 Thomas Built SAF-T-Liner HDX bus bearing Vehicle Identification Number 1T7Y84E20J1134485 (the "School Bus").  [Filing No. 1 at 2-3.]  The School Bus had a diesel engine that was manufactured by Cummins (the "Engine").  [Filing No. 1 at 2.]

On November 9, 2023, an agent of Kanawha was driving the School Bus and transporting students when it stopped for a railroad crossing and then accelerated to drive across the tracks.  [Filing No. 1 at 2.]  While crossing the tracks, there was a loud "pop" and the School Bus caught fire.  [Filing No. 1 at 2.]  The fire department came to the scene and extinguished the fire, but the School Bus was damaged.  [Filing No. 1 at 3.]

Kanawha presented a claim to National Union under the Policy.  [Filing No. 1 at 3.]  As part of its investigation, National Union investigated the origin and cause of the fire and found that it had originated from the Engine.  [Filing No. 1 at 3.]  Specifically, due to a defect, fuel leaked from a component called the fuel rail and from the pressure relief valve assembly which was ignited by the heated components in the Engine and caused the fire.  [Filing No. 1 at 4.]  National Union ultimately issued payment under the Policy for Kanawha's loss.  [Filing No. 1 at 3.]

3

B.    **The Amended Counterclaim**

In June 2025, Cummins filed an Amended Counterclaim against National Union. [Filing No. 27 at 10-13.] It set forth the following allegations, which the Court accepts as true only for purposes of the Motion to Dismiss.

In November 2023 when it conducted its investigation into the fire, National Union had possession of the School Bus, the Engine, and all components including the fuel rail. [Filing No. 27 at 10.] At that time, National Union was aware of a potential civil action against Cummins because it had determined that the fire originated in the Engine and that the Engine was manufactured by Cummins. [Filing No. 27 at 11.] National Union's agents, representatives, or persons acting at the direction of National Union performed a destructive examination of the School Bus, the Engine, and their components including the fuel rail, without notifying Cummins or giving Cummins the opportunity to participate, performing necessary documentation or testing (including pressure testing the unaltered fuel rail), or following National Fire Protection Association standards. [Filing No. 27 at 10-11.] Specifically, National Union intentionally and willfully removed and disassembled the fuel rail from the Engine before properly documenting or pressure testing it and without permitting Cummins to examine or test it before disassembly or removal, and intentionally and willfully discarded or destroyed the remainer of the School Bus and the Engine. [Filing No. 27 at 11.] National Union determined that the School Bus was a total loss, paid Kanawha accordingly, and now seeks $76,170 from Cummins. [Filing No. 27 at 11.]

The School Bus, Engine, and their component parts are vital evidence to Cummins' ability to prevail in this case because there are numerous potential causes for the fire in the Engine and "[e]xamination of the…[School] Bus and Engine and proper documentation and testing of their component parts and operations as a system are vital for determining the cause of the fire and

4

ruling out potential causes." [Filing No. 27 at 11.] Additionally, the intact and fully assembled fuel rail is vital evidence because "in order to determine whether the fuel rail was leaking at the time of the fire, it must be pressure tested without having been disassembled [and] cannot be reassembled in the same condition that it was at the time of the fire." [Filing No. 27 at 12.] National Union did not pressure test the fuel rail prior to disassembling it, did not document the fuel rail in its fully intact condition, and did not permit Cummins to examine or test the fuel rail prior its disassembly. [Filing No. 27 at 12.]

In discarding or destroying the School Bus and Engine and disassembling the fuel rail without properly documenting or pressure testing it, National Union intended to preclude Cummins from being able to prevail in the lawsuit. [Filing No. 27 at 12.] Consequently, Cummins does not have primary and vital pieces of evidence that it needs to defend itself in this lawsuit. [Filing No. 27 at 12.] It has incurred damages, and will continue to do so, in connection with National Union's spoliation of evidence, including costs and attorneys' fees in defending itself in this lawsuit without having access to certain evidence, "adverse and prejudicial findings of fact and law by a jury, and the subrogation amount sought by [National Union – $76,170." [Filing No. 27 at 12.] Cummins seeks actual damages, punitive damages, attorneys' fees, costs, and sanctions in connection with its Amended Counterclaim. [Filing No. 27 at 13.] National Union has moved to dismiss the Amended Counterclaim for failure to state a claim upon which relief can be granted. [Filing No. 29.]

### III.
### DISCUSSION

National Union argues in support of its Motion that Cummins "fails to plead facts to support multiple elements required for the tort of intentional spoliation, most significantly element 6 ('the party's inability to prevail in the civil action') and element 7 ('damages')." [Filing No. 30 at 6.] It

5

asserts that Cummins only alleges that it will "likely" be unable to prevail in the lawsuit without some type of sanctions or remedies, and not that it has "a complete inability to prevail." [Filing No. 30 at 6 (quotation and citation omitted).] National Union also argues that a spoliation of evidence claim "does not…provide a basis for a defendant to file a counterclaim against a plaintiff who has attempted to mitigate its damages by liquidating property damaged by the defendant's conduct"; that the Court has not entered judgment against Cummins, made any factual findings against Cummins, or entered an award of damages; and that Cummins "fails to allege any facts suggesting that it has incurred damages resulting from National Union's alleged intentional spoliation of evidence." [Filing No. 30 at 6-7.]

In its response, Cummins argues that it is not required to "make an unqualified and conclusive concession in its pleading that it is 'unable to prevail' at trial," and that if that were the case, an intentional spoliation claim could never be brought until all liability claims were tried. [Filing No. 33 at 5.] It contends that a party "cannot know with certainty what will occur at trial, and a party should not be forced to make such a statement in its pleading." [Filing No. 33 at 5-6.] Cummins notes that it alleges in the Amended Counterclaim that "the only way to determine whether the fuel rail was leaking at the time of the accident was to document and pressure test it before its disassembly because it cannot be reassembled in the same condition," so National Union's "disassembly of the fuel rail prevents Cummins from obtaining the only evidence available that can directly challenge [National Union's] claim that it leaked." [Filing No. 33 at 6-7.] Cummins argues that it also alleged that National Union's disposal of the School Bus prevented it from obtaining any other evidence that would have been available to Cummins to show other potential causes for the fire, and that "Cummins is now left without evidence to defend against [National Union's] claims." [Filing No. 33 at 7.] Cummins argues further that the injury in a

6

spoliation case is "the negative impact of the destruction of evidence upon a litigant's ability to prevail on its lawsuit," and that it is seeking compensatory damages from any adverse jury award along with attorneys' fees and punitive damages. [Filing No. 33 at 7 (quotation and citation omitted).] It contends that it sufficiently alleges damages as a result of National Union's spoliation of evidence. [Filing No. 33 at 7.]

National Union reiterates many of its arguments in its reply. [*See* Filing No. 34.] It also argues that based on Cummins' Amended Counterclaim and Answer, Cummins "is actively defending against National Union's claims on the merits and not yet conceding defeat." [Filing No. 34 at 1-2.] Additionally, National Union contends that intentional spoliation is not for a defendant to raise as a counterclaim, but rather "for a plaintiff to bring a claim against a third party because the plaintiff cannot prevail against the actual tortfeasor due to spoliation by the third party," and that "Cummins – as a defendant – seeks to take advantage of a tort created by West Virginia courts to address losses suffered by injured plaintiffs." [Filing No. 34 at 2 (emphasis omitted).] National Union argues that Cummins alleges speculative damages that will only occur if it loses at trial and that National Union mitigated its damages by selling the School Bus as scrap and "West Virginia law does not place a property damage victim in the Catch-22 that Cummins promotes: either fail to mitigate damages or face liability for 'intentional spoliation.'" [Filing No. 34 at 2-3.]

At the outset, the Court notes that a federal court sitting in diversity, as this Court does for both the claims raised in the Complaint and the Amended Counterclaim, must apply the choice of law provisions of the forum state. *Storie v. Randy's Auto Sales, LLC*, 589 F.3d 873, 879 (7th Cir. 2009) ("Because the district court's subject matter jurisdiction was based on diversity, the forum state's choice-of-law rules determine the applicable substantive law."). The parties appear to agree

that West Virginia law applies to the Amended Counterclaim. [*See* Filing No. 30 at 5-6 (National Union discussing in its brief in support of its Motion to Dismiss a claim for intentional spoliation of evidence under West Virginia law); Filing No. 33 at 4-8 (Cummins doing the same in its response brief).] Absent a disagreement, the Court will apply West Virginia law to the Amended Counterclaim. *Mass. Bay Ins. Co. v. Vic Koenig Leasing*, 136 F.3d 1116, 1120 (7th Cir. 1998); *Wood v. Mid-Valley, Inc.*, 942 F.2d 425, 426-27 (7th Cir. 1991) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies. We are busy enough without creating issues that are unlikely to affect the outcome of the case (if they were likely to affect the outcome the parties would be likely to contest them).").

"West Virginia recognizes intentional spoliation of evidence as a stand-alone tort when done by either a party to a civil action or a third party." *Hannah v. Heeter*, 584 S.E.2d 560, 571 (W. Va. 2003). The elements of an intentional spoliation of evidence claim under West Virginia law are: "(1) a pending or potential civil action; (2) knowledge of the spoliator of the pending or potential civil action; (3) willful destruction of evidence; (4) the spoliated evidence was vital to a party's ability to prevail in the pending or potential civil action; (5) the intent of the spoliator to defeat a party's ability to prevail in the pending or potential civil action; (6) the party's inability to prevail in the civil action; and (7) damages." *Id.* at 573. "Once the first six elements are established, there arises a rebuttable presumption that but for the fact of the spoliation of evidence, the party injured by the spoliation would have prevailed in the pending or potential litigation." *Id.*

National Union focuses only on the last two elements – the party's inability to prevail in a civil action and damages. The Court addresses each in turn.

A.      **Inability to Prevail in the Civil Action**

National Union argues that Cummins is required to allege that it is unequivocally unable to prevail in this lawsuit due to the spoliation of evidence, but the only case it relies upon does not stand for this broad proposition. Specifically, National Union cites *Williams v. Werner Enterprises, Inc.*, 235 W. Va. 32 (W. Va. 2015), to support its argument that "Cummins must have a complete 'inability' to prevail in this litigation in order to present a viable claim for spoliation." [Filing No. 30 at 6.] But the court in *Williams* – which was considering whether summary judgment had been properly granted – simply set out the elements of an intentional spoliation claim and did not discuss at all whether a plaintiff must allege that it is definitively unable to prevail in litigation in order to withstand a motion to dismiss. *Williams*, 235 W. Va. at 39 ("This appeal centers exclusively on the second factor of *Hannah*: the knowledge of the spoliator of a pending or potential civil action. The dispute in this case is over the degree of proof necessary to fairly say a spoliator 'knew' of a pending or potential claim, and thereafter destroyed evidence to foil the plaintiff's pursuit of the claim."). *Williams* is the only case that National Union cites in support of its argument. [*See* Filing No. 30 at 5-6; Filing No. 34 at 1-2.]

Instead, federal courts applying West Virginia law have denied motions to dismiss intentional spoliation claims like the one that Cummins asserts here in its Amended Counterclaim, where the plaintiff did not allege that it was definitively unable to prevail in the lawsuit. *See Casto v. Thompson*, 2024 WL 4028033, at *5 (S.D. W. Va. Sept. 3, 2024) (denying motion to dismiss intentional spoliation claim where plaintiff alleged that destroyed evidence was "'vital to the ability of Plaintiff' to prove his claims," he "ha[d] no other means to produce or obtain the [destroyed evidence]," and he "ha[d] been injured by the spoliation of direct evidence that would have proven the truth of his claims"); *Vannatter v. CSX Transp., Inc.*, 2021 WL 5989069, at *2 (S.D. W. Va.

9

Dec. 17, 2021) (applying same standard for motion to dismiss and denying motion for judgment on the pleadings where plaintiff alleged that defendant knew about a pending civil action, video that plaintiff claimed defendant had destroyed was working before and after collision, defendant had exclusive control over video recording device, defendant allowed evidence to become unusable or edited video, plaintiff was unable to view the entire incident on video, and plaintiff could not have the incident examined by an expert or present video in his case-in-chief).

Here, Cummins alleges that it "will likely be unable to prevail in this action." [Filing No. 27 at 12.] While one federal court sitting in West Virginia found that an allegation that plaintiffs "may be unable to prevail in the underlying causes of action having been deprived of the destroyed evidence" was insufficient to state a claim for intentional spoliation, *Mullins v. Ethicon, Inc.*, 2016 WL 6836941, at *5 (S.D. W. Va. Nov. 18, 2016), the Court views Cummins' "will likely be unable to prevail" allegation to represent a stronger probability than "may be unable to prevail." It also recognizes that Cummins cannot know for certain whether it can prevail without evidence it could have obtained from the School Bus or its Engine.[1]

---

[1] National Union argues that intentional spoliation is not properly brought as a counterclaim, that "Cummins attempts to reverse the law by claiming that an alleged tortfeasor may bring such a claim against an injured party," and that "even if National Union caused evidence to be destroyed (and it did not), there would have been no intent to defeat a pending or potential lawsuit because Cummins never would have been filing a lawsuit against National Union." [Filing No. 34 at 2] (quotations and alterations omitted).] The Court is puzzled by this argument. First, National Union does not point to any caselaw indicating that a party cannot bring intentional spoliation as a counterclaim and West Virginia law is contrary to that notion. *See Hannah*, 584 S.E.2d at 571 ("West Virginia recognizes intentional spoliation of evidence as a stand-alone tort when done by either a party to a civil action or a third party.") Second, National Union appears to be arguing that the party bringing an intentional spoliation claim must be a plaintiff, but that is not a requirement. Indeed, a spoliation counterclaim seems to fit appropriately here, where National Union is affirmatively blaming Cummins for a loss and Cummins is arguing that it cannot successfully defend against National Union's claim because National Union destroyed evidence.

In short, the Court finds that Cummins' allegation that it "will likely be unable to prevail in this action" – particularly when combined with its other allegations explaining the importance of the School Bus, the Engine, and their component parts to Cummins' case – is sufficient to plausibly allege the existence of the sixth element of Cummins' intentional spoliation of evidence Amended Counterclaim at the motion to dismiss stage.

**B.    Damages**

National Union also argues that Cummins does not sufficiently allege that it has suffered damages in connection with its intentional spoliation Amended Counterclaim, that any damages are speculative because no judgment has been entered against Cummins, and that National Union was just trying to mitigate its damages when it sold the School Bus for scrap. [Filing No. 30 at 6-7; Filing No. 34 at 2-4.] As to damages, Cummins alleges as follows:

- "Cummins has incurred and will continue to incur damages in connection with Plaintiff's intentional spoliation of evidence, including costs and attorney fees in defending itself in this action without having access to vital evidence, adverse and prejudicial findings of fact and law by a jury, and the subrogation amount sought by Plaintiff – $76,170." [Filing No. 27 at 12.]

- "Cummins seeks actual damages, punitive damages, attorneys' fees, costs, and sanctions arising from Plaintiff's intentional spoliation of evidence, including without limitation dismissal of Plaintiff's claim against Cummins." [Filing No. 27 at 13.]

While some of the damages Cummins alleges are, indeed, speculative – *e.g.*, adverse findings of fact or law by a jury – others are not. Cummins specifically alleges that it has incurred, and will continue to incur, costs and attorneys' fees in defending itself in this case "without having access to vital evidence." [Filing No. 27 at 12.] This reasonably includes the cost of exploring other defenses that it might not need to explore if it had been able to examine and test the School

11

Bus, the Engine, and their components. At the motion to dismiss stage, this allegation is sufficient to satisfy the "damages" requirement for an intentional spoliation of evidence counterclaim.[2]

Additionally, the Court does not find persuasive National Union's argument that it was just mitigating its damages when it sold the School Bus and Engine for scrap, and that allowing Cummins' Amended Counterclaim for spoliation of evidence to proceed would be at odds with the requirement to mitigate damages. National Union is free to argue in opposition to the Amended Counterclaim that its disposal of the School Bus and Engine was justified, but its argument regarding mitigation does not go to whether Cummins has sufficiently alleged an Amended Counterclaim for spoliation of evidence.

In sum, the Court finds that at the motion to dismiss stage, Cummins has sufficiently alleged a counterclaim for intentional spoliation of evidence. Accordingly, it **DENIES** National Union's Motion to Dismiss the Amended Counterclaim of Defendant, Cummins Inc. [Filing No. 29.]

## IV.
## CONCLUSION

For the foregoing reasons, the Court **DENIES** National Union's Motion to Dismiss the Amended Counterclaim of Defendant, Cummins Inc. [29.]

Date: 9/3/2025

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

---

[2] Further, under West Virginia law once a plaintiff satisfies the first six elements of an intentional spoliation claim, damages are presumed. *Hannah*, 584 S.E.2d at 573 ("Once the first six elements are established, there arises a rebuttable presumption that but for the fact of the spoliation of evidence, the party injured by the spoliation would have prevailed in the pending or potential litigation. The spoliator must overcome the rebuttable presumption or else be liable for damages."). This rebuttable presumption, coupled with the fact that Cummins has sufficiently alleged the first six elements, is significant.

**Distribution via ECF only to all counsel of record**